IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Misc. Action No. 17-mc-00200-MSK-MEH

INFINITY HOME COLLECTION,

    Movant,

v.

JAMAL COLEMAN, and
SHEENA COLEMAN, individually and on behalf of all others similarly situated,

    Respondents/Plaintiffs,

v.

WEYERHAEUSER COMPANY,

    Defendant.

---

## ORDER ON MOTION TO QUASH

---

**Michael E. Hegarty, United States Magistrate Judge**.

Movant Infinity Home Collection ("Infinity") seeks to quash Plaintiffs Jamal Coleman and Sheena Coleman's subpoena. I first find that, although disfavored, class-wide discovery is not prohibited at this stage. I then find that five of Plaintiffs' six requests seek relevant, non-burdensome, and non-privileged information. However, Infinity's motion is moot as to the sixth disputed request. Therefore, I deny in part and deny as moot in part Infinity's Motion to Quash Subpoena.

### BACKGROUND

On August 4, 2017, Plaintiffs filed a class action complaint against Weyerhaeuser Company in the United States District Court for the District of Delaware. *See* Compl., ECF No. 1, No. 17-cv-

01093-JFB-SRF (D. Del. Aug. 4, 2017). Weyerhaeuser produces and sells joists, which are installed in homes and other structures. *Id.* at ¶¶ 3, 27. Plaintiffs allege Weyerhaeuser attempted to enhance the fire protection of its TJI joists by coating them with "Flak Jacket Protection." *Id.* ¶¶ 23–24. However, according to Plaintiffs, the Flak Jacket Protection contains a formaldehyde-based resin, which emits excessive levels of noxious and toxic gases. *Id.* ¶¶ 26, 34. These gases allegedly render homes unhabitable. *Id.* ¶ 34.

Based on these allegations, Plaintiffs assert claims for: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) violation of the Magnuson-Moss Warranty Act, (4) negligence, (5) negligent failure to warn, (6) violation of the Delaware Consumer Fraud Act, (7) unjust enrichment, and (8) declaratory relief. *Id.* ¶¶ 58–146. Plaintiffs assert these claims on behalf of themselves and all individuals and entities who own or have signed contracts to purchase homes in which Weyerhaeuser's joists are installed. *Id.* ¶ 1.

On November 20, 2017, Magistrate Judge Sherry Fallon issued a Scheduling Order. Scheduling Order, ECF No. 14, No. 17-cv-01093-JFB-SRF (D. Del. Nov. 20, 2017). This order sets August 1, 2018 as the deadline for a class certification motion. *Id.* at 6. Additionally, the order states that the parties will prioritize discovery relating to class certification issues. *Id.* at 2.

On November 29, 2017, Plaintiffs served a subpoena on Infinity—one of the thirty-five entities that constructed homes with the allegedly defective joists. *See* Subpoena, ECF No. 1-3; Reply in Supp. of Mot. to Quash 3, ECF No. 27 ("Infinity acknowledges that it was one of the thirty-five (35) builders."). The subpoena contains eighteen requests for documents. Subpoena 4–7. On December 14, 2017, Infinity filed the present Motion to Quash Subpoena in this District. Mot. to Quash, ECF No. 1. Infinity contends the subpoena impermissibly seeks merits-related discovery,

does not allow a reasonable time to comply, seeks disclosure of privileged information, subjects it to undue burden, and impermissibly asks for information in Weyerhaeuser's possession. *Id.* at 4–7. Plaintiffs' response brief notes that the parties have narrowed the scope of the subpoena to six requests. Resp. to Mot. to Quash 6, ECF No. 21. Plaintiffs argue these requests seek relevant and non-burdensome information. *Id.* at 6–16. After Plaintiffs filed their brief, Infinity partially responded to the remaining requests. Reply in Supp. of Mot. to Quash 8–10, ECF No. 27. However, Plaintiffs still believe that Infinity's production was inadequate. *Id.* at 10.

## LEGAL STANDARDS

### I. Rule 26(b)(1)

"[T]he scope of discovery under the federal rules is broad." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding any nonpriviliged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." In considering whether the discovery is proportional to the needs of the case, Rule 26(b)(1) instructs courts to analyze "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party objecting to discovery must establish that the requested information does not fall under the scope of discovery. *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo 2004).

3

## II.     Rule 45

A subpoena served on a third party pursuant to Federal Rule of Civil Procedure 45 is subject to the same standards that govern discovery between the parties—it must seek relevant information and be proportional to the needs of the case. *Segura v. Allstate Fire & Cas. Ins. Co.*, No. 16-cv-00047-NYW, 2016 WL 8737864, at *5 (D. Colo. Oct. 11, 2016) (citing *Rice v. United States*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995)). Rule 45 requires courts to quash a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Additionally, a court may quash a subpoena if the subpoena requires disclosure of a trade secret or other confidential information. Fed. R. Civ. P. 45(d)(3)(B).

## **ANALYSIS**

I deny Infinity's request to quash the subpoena. I first find that pre-certification discovery is not limited to class-certification issues unless the discovery would pose an undue burden on the responding party. Then, I find that requests six, nine, eleven, twelve, and sixteen seek relevant, non-privileged, and non-burdensome information. I decline to address the discoverability of request seventeen, because Infinity has complied with that request.

Class-wide discovery related to the merits of a class action is not categorically prohibited prior to certification. *See In re Bank of Am. Wage & Hour Emp't Practices Litig.*, 275 F.R.D. 534, 541 (D. Kan. 2011) ("[T]here is no bright-line rule that in the pre-certification stage of discovery, plaintiffs must come forward with evidence of a nationwide policy or practice before being allowed to obtain discovery aimed at that very issue."). Instead, "the recognized need for pre-certification

4

discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304–05 (D. Colo. 1998). To be sure, pre-certification discovery should generally pertain to the requirements of Rule 23. *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012). The reason for this general rule is that responding to class-wide discovery before the plaintiff has demonstrated the requirements for class certification frequently presents an undue burden on the responding party. *See, e.g.*, *Tracy*, 185 F.R.D. at 305 (stating that pre-certification discovery should not be "so broad that the discovery efforts present an undue burden on the defendant"); *Nat. Org. for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 276 (D. Conn. 1980) (denying pre-certification discovery because of the burden it posed on the defendant). However, "when the burden imposed on the responding party is minimal or non-existent," the trial court may exercise its discretion to allow discovery beyond matters related to class certification. *See Allen*, 283 F.R.D. at 635.

In the action underlying this miscellaneous case, the court has not entirely prohibited merits discovery. Although that court's Scheduling Order creates a preference for discovery related to certification, it does not prohibit merits discovery. *See* Scheduling Order 2, ECF No. 14, No. 17-cv-01093-JFB-SRF (D. Del. Nov. 20, 2017) ("The parties agree to prioritize class discovery . . . ."). Therefore, to the extent Plaintiffs seek information unrelated to class certification, I will limit the request only if responding prior to class certification would impose an undue burden on Infinity. *See Roberts v. C.R. England, Inc.*, No. 12-cv-0302, 2013 WL 3893987, at *3 (D. Utah July 26, 2013) (refusing to limit pre-certification discovery, in part because "[d]iscovery in this case was not bifurcated . . . .").

5

**I.     Request Number Six**

Plaintiffs' sixth request seeks:

All documents constituting or relating to communications (written, email, oral or otherwise) between You and any other individual or entity regarding the TJI Joists, including, without limitation, any governmental entity, realtor, real estate agent, prospective homebuyer, insurance company, bank, mortgage lender, contractor, subcontractor, vendor, inspection company, testing company, engineer, architect, builder, customer, customer's lawyer or representative, *etc.*

Subpoena 5, ECF No. 1-3. This request is relevant to class certification and the merits of Plaintiffs' class claims. Communications that Infinity had with home buyers may demonstrate potential class members' knowledge of the defect and how the joists affected their purchasing decisions. Correspondence with other individuals and entities may explain how the defects manifested themselves in the homes Infinity built. This information is relevant to Rule 23's commonality and predominance requirements. Indeed, if potential class members learned of the defect at significantly different times, it may be difficult to establish commonality with regard to Plaintiffs' negligent failure to warn claim. Similarly, if the defects with the joists manifested themselves differently, it may be difficult to establish that common issues predominate, especially with regard to damages. Therefore, I find this request relevant to the requirements of Rule 23 and to the merits of a potential class action.

Infinity contends the information Plaintiffs seek is privileged and that responding to the request would impose an undue burden. Mot. to Quash 6–7, ECF No. 1. According to Infinity, the information is privileged, because request six seeks "lawyer communications." *Id.* at 6. However, the request asks for communications between Infinity and its *customer's* lawyer, not communications between Infinity and its *own* lawyers. Subpoena 5. Therefore, Infinity has not met its burden of demonstrating that the requested information is protected by the attorney-client

privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (stating that the purpose of the attorney-client privilege "is to encourage full and frank communication *between attorneys and their clients*" (emphasis added)). Regarding Infinity's undue burden contention, Infinity does not specifically explain how responding to this request will be burdensome. *See, e.g.*, *Simpson v. Univ. of Colo.*, 220 F.RD. 354, 359 (D. Colo. 2004) ("An objecting party cannot sustain [its] burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing."). Therefore, I deny Infinity's request to quash the subpoena with regard to request six.[1]

## II.     Request Number Nine

Plaintiffs' ninth request asks for: "Documents sufficient to show the first date on which Weyerhaeuser notified You of any problems with the TJI Joists." Subpoena 6, ECF No. 1-3. Regardless of whether this case proceeds as a class action, the date on which Weyerhaeuser informed Infinity of the defects is relevant to the merits of Plaintiffs' negligence and negligent failure to warn claims. Plaintiffs allege Weyerhaeuser was negligent and negligently failed to warn Plaintiffs, because it sold the joists despite being aware of the foreseeable risks associated with them. Complaint ¶¶ 105, 112, ECF No. 1, No. 17-cv-01093-JFB-SRF (D. Del. Aug. 4, 2017). The date Weyerhaeuser informed its builders of the defect may help establish when Weyerhaeuser became aware of the defect. If Weyerhaeuser informed Infinity of the defect long before it informed Plaintiffs, this would help prove Plaintiffs' individual claims for negligence and negligent failure to warn.

---

[1] Infinity argues in its motion that the subpoena fails to allow a reasonable time to comply. Mot. to Quash 5. However, the parties have engaged in a lengthy conferral process since Infinity raised this objection, and Plaintiffs state they are willing to provide Infinity even more time to comply. Furthermore, Infinity abandons this argument in its reply brief. Therefore, I need not decide whether the subpoena provided a reasonable amount of time to respond.

Infinity argues that Plaintiffs' requests impermissibly seek information available from Weyerhaeuser.[2] Mot. to Quash 7, ECF No. 1. Although a subpoena is more likely to impose an undue burden when it seeks information available from a party to the action, I have no evidence before me indicating that Weyerhaeuser preserved its communications with Infinity. Furthermore, as Plaintiffs recognize, Infinity could likely respond to the request by producing a single letter or email. Therefore, the request does not subject Infinity to an undue burden, and I decline to quash the subpoena as to the ninth request.

## III. Request Number Eleven

Plaintiffs' eleventh request seeks: "All documents constituting or relating to Your efforts to notify Your customers and/or contractors and/or subcontractors about the problems with the TJI Joists." Subpoena 6, ECF No. 1-3. As an initial matter, Infinity has substantially complied with this request. During the parties' conferral process, Plaintiffs informally asked for: "All disclosures to buyers/realtors regarding the joists at issue/formaldehyde/remediation." Reply in Supp. of Mot. to Quash 8, ECF No. 27. In response, Infinity produced four letters it sent to a specific home buyer, a form correspondence sent to home buyers who were under contract, and a form disclosure provided to home buyers who executed contracts once marketing recommenced on affected homes. *See* ECF No. 27-1. Plaintiffs acknowledged in their response brief that "form letters and perhaps a few individualized communications" would satisfy their eleventh request. Resp. to Mot. to Quash 8, ECF No. 21.

However, to the extent Infinity has responsive documents it has not produced, Infinity must

---

[2] Infinity does not specify which requests seek information in Weyerhaeuser's possession. Because Plaintiffs' ninth request asks for Weyerhaeuser's communications, I analyze this objection as it relates to this request.

8

provide Plaintiffs with that information. The request is relevant to class certification, because it seeks information regarding the date each potential class member became aware of the defect. If Weyerhaeuser informed home buyers of the defect at substantially different times, this may undercut Plaintiffs' contention that common issues predominate their negligent failure to warn claim. Indeed, determining whether Weyerhaeuser was negligent in failing to promptly notify home buyers would require a different inquiry for each class member. Therefore, Infinity must produce any responsive material it has not already disclosed.

**IV.     Request Number Twelve**

Plaintiffs' twelfth request seeks:

> Documents sufficient to identify the location and identity of all homes or other structures that You built that contain or contained the TJI Joists, as well as the identity of any person(s) or entity(ies) who attended a showing, made an offer on, purchased, entered into a contract to purchase, or resided in any such home or structure, and their contact information.

Subpoena 8, ECF No. 21. Similar to Plaintiffs' eleventh request, Infinity has substantially complied with this request. Infinity produced a document containing the address of each affected property and the name of the corresponding home owner. ECF No. 27-1, at 1. Therefore, the only portion of Plaintiffs' request with which Infinity has not complied relates to documents identifying individuals who attended showings or made offers on homes.

I find this remaining information relevant to Plaintiffs' claims. Individuals who attended showings and made offers on Infinity's homes may be able to inform Plaintiffs when they became aware of the joists and whether the joists affected their purchasing decisions. Although this information may not be related to class certification, responding to the request will not impose an undue burden on Infinity. Indeed, the request merely asks Infinity to produce certain individuals'

9

names. If Infinity possesses this information, it will not be difficult to produce. Because the burden on Infinity is minimal and because this is the only request that seeks information not directly relevant to class certification, Infinity must respond to the remaining portion of this request.

**V.      Request Number Sixteen**

Request sixteen asks for:

> Copies of all purchase and sale agreements with homeowners, home purchasers or prospective purchasers for any home or other structure in which the TJI Joists were ever installed. This Request includes all purchase and sale agreements regarding the sale of homes both pre- and post-remediation.

Subpoena 7, ECF No. 1-3. I find this request relevant to class certification. The purchase and sale agreements list the selling price of each house that contains the joists, which will help establish how the joists affected home values. Additionally, the agreements may detail any concessions or other agreements the purchasers made as a result of the joists, which is relevant to creating a class-wide damages model. Whether damages can be determined on a class-wide basis is an important factor in deciding whether to certify a class. *See Roberts v. C.R. England, Inc.*, No. 2:12-cv-0302, 2013 WL 3893987, at *2 (D. Utah July 26, 2013) ("Some discovery is necessary prior to a determination of class certification. This includes the necessity of discovery concerning damages, which must be rigorously analyzed during the certification process."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (holding that in certain circumstances, being unable to prove class-wide damages may result in individualized questions that "inevitably overwhelm questions common to the class").

Infinity objected to a modified version of request sixteen on the basis that the requests concern confidential and proprietary information. Reply in Supp. of Mot. to Quash 8, ECF No. 27. However, Infinity does not meet its burden of demonstrating privilege. A party asserting privilege must "describe the nature of the documents, communications, or tangible things not produced or

disclosed." Fed. R. Civ. P. 26(b)(5). Infinity does not detail the nature of the documents or explain why they are privileged. To the extent Infinity believes the agreements contain confidential information, Infinity may redact any irrelevant personal information, and the documents may be disclosed pursuant to the protective order in the underlying case. *See* Stipulated Protective Order, ECF No. 17, No. 17-cv-01093-JFB-SRF (D. Del. Nov. 30, 2017). Therefore, I find Infinity's objection to be without merit, and I deny its request to quash request sixteen.

## VI. Request Number Seventeen

Infinity's motion is moot as to request seventeen, because Infinity has certified that it does not possess responsive documents. This request seeks: "All documents discussing the effect of the TJI Joists or the effect of remediation of the TJI Joists on home value(s)." Subpoena 7, ECF No. 1-3. In its reply brief, Infinity details alternative requests that Plaintiffs made while conferring on this motion. Reply in Supp. of Mot. to Quash 8, ECF No. 27. The first of these requests asks for, "All documents that relate to diminution in value of homes due to the joists at issue." *Id.* Infinity responded that it "has no documentation related to the diminution in value of homes due to the joists as issue, and therefore, is unable to produce anything in response to this request." *Id.* Because request seventeen also seeks documents discussing decreases in home value as a result of the joists, I find the alternative request substantially similar to request seventeen. Infinity has complied with this request by certifying that it has no responsive documents. Therefore, I deny Infinity's motion as moot with regard to request seventeen.

## **CONCLUSION**

In sum, I find that Infinity must respond to subpoena requests six, nine, eleven, twelve, and sixteen to the extent it has not already done so. Because Infinity complied with request seventeen,

Infinity's motion is moot as to this request. Accordingly, Infinity's Motion to Quash Subpoena [filed December 14, 2017; ECF No. 1] is **denied in part and denied as moot in part**.

Entered and dated at Denver, Colorado, this 10th day of April, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge